[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
In this action on a promissory note, the plaintiff seeks a CT Page 11008 garnishment of the named defendant's ownership interest in a law firm partnership. The principal issues are (1) in what amount is the plaintiff entitled to a prejudgment remedy, and (2) is the plaintiff entitled to garnish the named defendant's "ownership interest" in the law partnership.
On October 30, 1992, the defendants executed a promissory note whereby they promised to pay the plaintiff the principal sum of $45,000.00 plus interest in twenty-four equal monthly installments of $1,875.00 commencing on December 1, 1992 and ending November 1, 1994. No payments on the note have been made since January 1994. The plaintiff remains the holder of the note which is unsecured. The plaintiff commenced this action for damages on June 7, 1994. Thereafter, the plaintiff applied for a prejudgment remedy against the named defendant (hereinafter, the defendant). A hearing on that application was held in September 1994.
At the time of hearing on the plaintiff's application, the due date for the remaining installment payments had not yet passed. The defendant argued that since the note did not contain an acceleration clause, only the unpaid installments and not the entire balance of the note was due and owing. See Quick v.American Steel Pump Corp., 397 F.2d 561, 564 (2d Cir. 1968);Schwartz v. Lafayette American Bank Trust Co., Superior Court, Judicial District of Fairfield, No. 307752, p. 4, 1993 Ct. Casebase 9998, 9999 (1993), citing Restatement (Second) Contracts § 243(2), (3), Calamari Perillo, Contracts § 12-9 (3d Ed. 1987); Farnsworth, Contracts § 8.18 (1990). Here, however, there were but two final installments to be made and there was evidence that the defendants would not pay them. For these reasons, the court finds that there is probable cause that the plaintiff will recover a judgment against the defendants in the amount of $25,000, including interest and costs of collection as provided for in the note.
The more troubling issue is whether the plaintiff is entitled to a garnishment. A garnishment is a prejudgment remedy; General Statutes § 52-278a(d); and as such is governed by chapter 903a of the General Statutes. The defendant is a partner in the law firm Robinson Cole. In his application, the plaintiff states that he seeks "to garnishee Robinson Cole, a Connecticut partnership . . ., as it is the agent and trustee of the Defendant and has concealed in its possession property of the Defendant." More specifically, the plaintiff seeks to garnish the defendant's CT Page 11009 "ownership interest in the partnership which . . . consists of the profits and surplus of the partnership." General Statutes § 34-64 does provide: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." The defendant claims that the court may not order such a garnishment because the Uniform Partnership Act, which has been enacted in Connecticut; General Statutes § 34-39 et seq.; provides that "a partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership"; General Statutes § 34-63(2)(c); and because the garnishment sought is for earnings.
In deciding whether a prejudgment remedy should issue a court is required to determine "whether the property sought to be subjected to the prejudgment remedy is exempt from execution. . . ." General Statutes § 52-278d(a)(3), as amended by Public Act No. 93-431 § 2. Earnings are exempt from execution in connection with a prejudgment remedy. General Statutes § 52-278b provides in pertinent part: "Notwithstanding any provision of the general statutes to the contrary, no prejudgment remedy shall be available to a person in any action at law or equity . . . for the garnishment of earnings as defined in subsection (5) of section52-350a." General Statutes § 52-350a(5) provides that "`[e]arnings' means any debt accruing by reason of personal services, including any compensation payable by an employer to any employee for such personal services, whether denominated wages, salary, commission, bonus or otherwise." These words compel the conclusion that the term "earnings" is to be broadly construed. Cf. Hope v. Cavallo, 163 Conn. 576, 585, 316 A.2d 407 (1972).
The plaintiff argues that "[a] partner's share of the profits and surplus of the partnership is fundamentally a function of, and is accrued by reason of, his status as a partner. It is not accrued by reason of personal services, as no personal services need be rendered and no employer-employee relationship need exist in order for a partner to be entitled to a share of the profits and surplus of the partnership."
This ignores the reality of the peculiar species of partnership which is a law firm. "The general law of partnership and agency provides only the most general and incomplete compass. Fitting lawyer's problems only into general partnership and agency molds also ignores the special claims of clients and the special responsibilities of lawyers under the lawyer codes and other law specifically regulating lawyers." Hillman, Robert W., Law Firm CT Page 11010 Breakups (Little, Brown Co. 1990) p. xv. "Indeed, law firms present the most compelling of cases illustrating that many modern partnerships have outgrown the statutes under which they operate. Increasingly, law partnerships are established as structured, hierarchical organizations in which the positions of subordinate partners more closely approximate that of employees than co-owners. This is particularly true of large law firms with stratified partnerships that include one or more layers of `nonequity' or `salaried' partners. Hierarchy, it should be noted, is not solely a function of size, and in many small firms the relationship of the partners is anything but that of co-owners. When small, medium, or large partnerships operate under agreements providing for hierarchical rather than egalitarian associations, determining the relative rights and duties of partners presents comparatively few difficulties. Absent such agreements, determining the rights of departing and continuing `partners' may prove extremely difficult." Hillman, op.cit., 1991 Supplement, pp. 40-41.
No party introduced evidence of any partnership agreement governing the law firm of which the defendant is a partner. The court takes judicial notice that that law firm is large by Connecticut standards. Cf. Gordon v. United Aircraft Corporation,24 Conn. Sup. 262, 264, 189 A.2d 792 (1962), affirmed, 150 Conn. 328,189 A.2d 384 (1963). Generally, in a law firm partnership, a partner's earnings, as broadly defined in General Statutes § 52-350a(5), are inextricably interrelated with the personal services he renders on the one hand and with his status as a partner on the other. Presumptively, earnings from a law partnership are not "passive income"
Unlike many other types of partnerships, in a law firm partnership each partner is impressed with affirmative responsibilities simply by virtue of his being a partner. Thus, for example, Rule 5.1(a) of the Rules of Professional Conduct provides: "A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the rules of professional conduct." Thus, a partner, simply by virtue of his status as a partner is "required to create reasonable safeguards to promote compliance by the firm as a whole with ethical rules." Hazard Hodes, The Law of Lawyering, A Handbook on the Model Rules of Professional Conduct (2d Ed.) vol. 2 § 5.1:101. Indeed, a partner's "failure to supervise the operations of the firm can constitute unethical behavior that warrants the imposition of CT Page 11011 disciplinary sanctions upon him." ABA/BNA Lawyers' Manual on Professional Conduct 91:203-204. "Rule 5.1(a) says in effect that all partners in a firm are `supervisory' lawyers per se and, accordingly, are responsible for making `reasonable efforts' to ensure compliance with the Rules of Professional Conduct by members of the firm, including other partners. These efforts can take many forms, so long as they are reasonably calculated to eliminate or inhibit violations." Hazard Hodes, op. cit., § 5.1:200. Similarly, Rule 5.3 of the Rules of Professional Conduct provides: "With respect to a nonlawyer employed or retained by or associated with a lawyer: (a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer."
Rule 7.5(a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1."[1] These rules effectively forbid the listing of inactive, silent or passive partners since "listing other lawyers on a letterhead implies that their skill and expertise are available for the lawyer to draw on in different cases." ABA/BNA Lawyer's Manual on Professional Conduct 81:3004 (1993).
These rules underscore the difficulty in separating the compensation received for "personal services" rendered by a partner in a law firm from the monies she may receive simply by virtue of being a partner in the firm. In the absence of any evidence as to the nature and terms of the defendant's partnership, the court holds that the defendant's interest in the "profits and surplus" of the partnership which the plaintiff seeks to garnish are "earnings" as defined in General Statutes § 52-350a(5) and therefore exempt from garnishment by General Statutes § 52-278b.[2]
The plaintiff's application for a prejudgment remedy is denied.
Bruce L. Levin Judge of the Superior Court